**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARIE MURRELL; KATRINA LITTLE;
WALTER LITTLE, a minor; DARRYL
LITTLE, a minor, by their next friend
and Guardian, Katrina Little,
            *Plaintiffs-Appellants,*

v.                                              No. 00-2411

THE OCEAN MECCA MOTEL,
INCORPORATED,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-00-428-S)

Argued: May 8, 2001

Decided: August 7, 2001

Before MICHAEL and GREGORY, Circuit Judges, and
Arthur L. ALARCON, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

---

Reversed and remanded by published opinion. Judge Michael wrote
the opinion, in which Judge Gregory and Senior Judge Alarcon
joined.

---

## COUNSEL

**ARGUED:** James Patrick Gillece, Jr., MCGUIRE WOODS, L.L.P.,
Baltimore, Maryland, for Appellants. Lisa L. Walker, WHITEFORD,

TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee.
**ON BRIEF:** Elena D. Marcuss, MCGUIRE WOODS, L.L.P., Baltimore, Maryland, for Appellants. Edward M. Buxbaum, WHITE-FORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee.

---

## OPINION

MICHAEL, Circuit Judge:

Marie Murrell, who is white, checked into the Ocean Mecca Motel while the rest of her party remained in the car. Within minutes the motel discovered that the other members of Murrell's party were African American, and the entire party was promptly evicted without explanation. Murrell and the members of her party sued the motel under 42 U.S.C. § 1981(a), alleging that the motel interfered with their right to contract on account of their race. The district court granted the motel's motion for summary judgment. We reverse because the plaintiffs have established a prima facie case and have proffered sufficient evidence for a rational jury to conclude that the motel's stated reason for their eviction is pretext for discrimination.

I.

Because the plaintiffs were the nonmovants in the summary judgment proceedings, we construe the facts in the light most favorable to them, drawing all justifiable inferences in their favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1996). On July 30, 1999, Marie Murrell took her two young grandsons (ages seven and five) and their mother, Katrina Little, on a weekend trip to the beach in Ocean City, Maryland. Murrell is white, and the Littles are African American. The party made the trip from the Littles' apartment near Washington, D.C., to Ocean City, arriving late on Friday afternoon. Murrell and Little had not reserved a room, and they were unable to find accommodations at the first three motels they tried. Finally, the party stopped at the Ocean Mecca Motel. Murrell went into the office to inquire about a room while the Littles remained in the car. Two motel employees, William Charrier (the desk clerk) and Lacey Mur-

phy, were in the office at the time. Murrell told Charrier that she needed a room for four, two adults and two children, and Charrier said that rooms were available. Charrier assigned Murrell a room on the south side of the motel for two nights and Murrell paid the bill in advance with $544 in cash. Murrell then left the office and drove her party to a parking spot near the assigned room. As soon as the Murrell party deposited its bags in the room, the children headed for the outdoor pool, followed by Murrell, their grandmother. Little, who stayed behind to fill the ice bucket, called the front desk for the location of the ice machine. Charrier, who had taken Little's call, happened to be looking out the office window as Little left the room and headed to the ice machine. Upon seeing Little, Charrier realized for the first time that the Murrell party was interracial.

Within about five minutes Little joined the rest of her party at the motel's pool. Immediately thereafter, Charrier appeared at the pool and confronted Murrell and Little. According to Murrell and Little, Charrier demanded in a loud, stern voice that they leave the motel immediately. When Murrell asked him why they had to leave, Charrier repeated, "you'll have to leave right now." Little then asked Charrier, "what did we do?" Instead of answering Little's question, Charrier said, "I want you off my premises now." Murrell and Little say that despite their repeated requests, they were not told why they were being thrown out of the motel.

Charrier presents a different version of the events. According to Charrier, Lacey Murphy, the other motel employee on duty, walked out to the pool to make a routine check. When she returned to the office, Murphy told Charrier that there appeared to be "too many people" in Murrell's room. (The motel claims that its south-side rooms, where Murrell was assigned, have a four-person limit.) Charrier immediately went out to the pool to confront Murrell and Little. He claims that when he inquired about the number in her party, Murrell admitted that there were five. According to Charrier, he then told Murrell that he did not "have a room big enough" for five people. Charrier says that Little pointed out that one in their party was "only a baby," but Charrier replied, "all children count." Charrier contends that he was enforcing the motel's policy that no more than four guests were allowed to occupy a south-side room.

We pause to mention that Murrell and Little proffered evidence to contradict the motel's assertion that there was a fifth person (a baby) in the Murrell party and that the motel had a four-person limit for south-side rooms. First, although Little did have a daughter who was six months old at the time, the baby was at home with her father while Murrell, Little, and the two boys went to Ocean City for the weekend. This was confirmed in testimony by Murrell, Little, the two boys, and the baby's father. The family's testimony is also supported by an admission by Charrier, who inspected the Murrell party's room right before the party removed its belongings. Charrier has a clear recollection of what he saw: luggage on the floor and the bed, with a few articles of clothing removed. Charrier, as he recalls, did not see any articles for the care or entertainment of a baby, such as diapers, diaper bags, formula, bottles, or baby toys. Second, Murrell and Little proffered evidence to refute the motel's claim that the Murrell party was evicted because its room had a four-person limit. The motel's brochure and web site stated that all rooms had between a five- and seven-person limit. There was no mention of any room with a four-person limit. Further, on every other occasion when guests exceeded the room limit, they were given the option of renting a second room or a larger room. Although a second room was available when the Murrell party was evicted, Charrier did not offer the party another room.

We return to the events occurring at the time the Murrell party was being evicted. After Charrier told Murrell that her party would have to leave the motel, Murrell and her family retrieved their belongings from the room, and Murrell went to the front desk to get her money back. When Charrier handed her the cash, he said that he was withholding fifty dollars for the cost of cleaning the room. Murrell demanded a full refund, pointing out that her party had been in the room for less than ten minutes. Charrier argued with Murrell, but he eventually refunded the entire amount. Before she left the office, Murrell told Murphy, the other motel employee, that she was being asked to leave because of race discrimination. Murphy did not respond. As Murrell headed to her car, she met a party of two, an African American man and a white man, coming into the motel. Murrell said to the men, "I'm with black people and they're throwing me out." The two men mentioned Murrell's race discrimination complaint when they went into the motel office. Murphy, who was at the desk,

told the men that Murrell had been evicted because she had too many persons in her room. The men rented a room without difficulty.

Murrell, Little, and Little on behalf of her two minor sons sued the motel under 42 U.S.C. § 1981(a), alleging that the motel had unlawfully interfered with their right to contract on account of their race. The district court granted the motel's motion for summary judgment, concluding that: "where a group of individuals of different races is evicted all of a piece, there is insufficient circumstantial evidence to carry their individual claims to trial, absent at least some other evidence, such as a history of discrimination." The plaintiffs now appeal, and we review the district court's grant of summary judgment de novo. *See Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988).

## II.

Section 1981 outlaws race discrimination in the making and enforcement of private contracts. The statute provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This right extends, for example, to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). Section 1981 only proscribes purposeful discrimination, *see Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982), and applies to "an innkeeper's discriminatory eviction of a guest on the basis of race," *Evans v. Holiday Inns, Inc.*, 951 F. Supp. 85, 88 (D. Md. 1997).

In this case the plaintiffs do not point to any direct evidence of discrimination. As a result, the question is whether the plaintiffs have proffered circumstantial evidence of discrimination sufficient to satisfy the familiar *McDonnell Douglas* framework for proof. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 278 (4th Cir.), *cert. denied*, 121 S. Ct. 181 (2000). Under the *McDonnell Douglas* proof scheme the plaintiff must first establish a prima facie case of discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Once the

plaintiff establishes a prima facie case, the defendant must respond with evidence that it acted with a legitimate, nondiscriminatory reason. *See id.* at 506-07. If the defendant makes this showing, the plaintiff must then present evidence to prove that the defendant's articulated reason was pretext for unlawful discrimination. *See id.* at 507-08. Although the evidentiary burdens shift back and forth under the *McDonnell Douglas* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Turning to this case, we conclude, for the reasons set forth below, that the plaintiffs have established a prima facie case of discrimination and have proffered sufficient evidence to show that the motel's explanation for their eviction is pretext for discrimination. The district court thus erred in granting summary judgment in favor of the motel.

A.

A plaintiff makes out a prima facie case under § 1981 of discrimination in hotel accommodations when she demonstrates that (1) she is a member of a protected class, (2) she sought to enter into or had a contract with a hotel for accommodations, (3) she met the hotel's standard requirements for occupancy, and (4) she was denied accommodations that were available to guests outside of the protected class. *Cf. Evans*, 951 F. Supp. at 89 (stating similar test for establishing a prima facie case of race discrimination in denying hotel accommodations); *cf. also Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001) (adopting similar test when an African American customer was evicted from a store); *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 707 (D. Md. 2000) (applying similar formulation to claim that restaurant provided inferior service to African American patrons). The plaintiffs here can establish a prima facie case of discrimination on the basis of race.

First, the plaintiffs are members of a protected class. The plaintiffs were traveling in one party made up of three African Americans (Little and her two children) and one white person (Murrell). "It is well-settled that a claim of discrimination based on an interracial relationship or association is cognizable under Section 1981." *Rosenblatt v. Bivona & Cohen, P.C.*, 946 F. Supp. 298, 300 (S.D.N.Y. 1996). It is

also well established that both whites and members of racial minorities may sue for violations of § 1981. *See McDonald v. Santa Fe Train Transp. Co.*, 427 U.S. 273, 286-87 (1976); *Fiedler v. Marumsco Christian Sch.*, 631 F.2d 1144, 1150 (4th Cir. 1980) (holding that a white student expelled for dating a black student could sue under § 1981). Second, the plaintiffs had a contract for motel accommodations, and they were entitled to enjoy the benefits and privileges of that contract. *See* 42 U.S.C. § 1981(a). Third, the plaintiffs met the motel's standard requirements for occupancy. They paid in full with cash when they checked in. Because there were only four in their party, they did not exceed the four-person-per-room limit now alleged by the motel. In addition, their conduct was not in any way unruly or objectionable. Fourth, the plaintiffs were denied accommodations that were available to members outside of the protected class. There were parties at the motel whose members were all of the same race. The plaintiffs, however, were the only party asked to leave the motel. In sum, the plaintiffs can establish each of the four elements of a prima facie case of race discrimination under § 1981.

B.

Because the plaintiffs have established a prima facie case, the burden shifts to the motel to offer a legitimate, nondiscriminatory reason for the eviction. *See, e.g.*, *Hicks*, 509 U.S. at 506-07. The motel contends that the plaintiffs were evicted because the number in their party exceeded the maximum guest capacity for their room. This explanation is sufficient to shift the burden to the plaintiffs, who must show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000), the Supreme Court elaborated on the plaintiff's burden in rebutting the defendant's explanation. The question in *Reeves* was "whether a defendant is entitled to judgment as a matter of law when the plaintiff's case consists exclusively of a prima facie case of discrimination and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action." *Id.* at 137. The Supreme Court held that in appropriate circumstances "a plaintiff's prima facie case, combined with sufficient evidence to find that the [defendant's] asserted justification is false, may permit the trier of fact to conclude that the [defendant] unlaw-

fully discriminated." *Id.* at 148. *See also id.* at 147 (reiterating that "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the [defendant's] explanation" (emphasis in original)). Once a plaintiff has established a prima facie case and shown the defendant's explanation to be false, the plaintiff need not submit additional evidence of discrimination unless "no rational factfinder could conclude that the action was discriminatory." *Id.* at 148. *See also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001). In this case the plaintiffs have proffered sufficient evidence to show that the motel's explanation is false. They have also submitted additional evidence of discrimination. As a result, a rational factfinder could conclude that the motel's explanation is pretext for discrimination.

There is ample evidence for a factfinder to conclude that the motel's explanation is false. The motel claims that the plaintiffs were evicted because they were a party of five, including a baby, and that their room had a four-person capacity. Murrell and Little insist that there were only four persons in their party, two adults and two boys, ages seven and five. Murrell, Little, and the two boys testified that Little's baby was not with them on the trip to Ocean City. This is confirmed by the baby's father, who testified that he kept the baby in Washington while the others went to Ocean City. The motel does not claim that it made a good faith mistake on the number of people in the Murrell party. Instead, Charrier claims that he saw Little holding a baby at the pool. Charrier claims that he then asked Murrell "if everyone [there] was in their party, both the children, [two adults] and the baby," and that Murrell answered, "Yes." The plaintiffs, in turn, point to evidence that undermines Charrier's credibility on whether he saw a baby in the Murrell party. The plaintiffs note that Charrier admitted that he did not see any articles for the care of a baby when he inspected the plaintiffs' room. The plaintiffs also note that the per-room guest limits stated in the motel's web site and brochure are inconsistent with Charrier's assertion that Murrell's room had a four-person limit. One side or the other is not telling the truth. A summary judgment proceeding is, of course, "not the proper forum for assessing the relative weight of conflicting evidence." *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 n.10 (4th Cir. 1987). Because at this stage we view the facts in the light most favorable to the plaintiffs, we must assume that there were four per-

sons in the plaintiffs' party, and therefore the motel's explanation for evicting the plaintiffs is false.

In addition to discrediting the motel's explanation, the plaintiffs have submitted additional evidence of discrimination. Murrell, who is white, checked into the motel without any trouble. When Murrell checked in, the motel employees were not aware that her party was interracial in composition. When the motel employees discovered, within ten or fifteen minutes, that the Murrell party was interracial, the party was promptly evicted. According to Murrell and Little, they were not given any explanation for the motel's action. Their party was the only one evicted from the motel. There was "no apparent reason" for the plaintiffs' eviction other than their respective races. *Houston v. Benttree, Ltd.*, 637 F.2d 739, 741 (10th Cir. 1980).

The motel relies on the fact that the other interracial party at the motel had no difficulty. However, this party arrived at the motel right after the plaintiffs accused the motel of race discrimination in evicting them. A rational factfinder could conclude that the motel did not discriminate against the second party because the motel wanted to avoid being accused of back-to-back incidents of discrimination. The motel also relies on the fact that Murphy told the second party that Murrell was evicted because she had too many people in her room. This may only establish that the motel came up with an after-the-fact explanation after the Murrell party was evicted. According to the plaintiffs, Charrier, who ordered them to leave, gave them no explanation for their eviction. A rational factfinder could conclude that Murphy made up the explanation when the second party arrived and reported that Murrell had just said that she had been evicted because she was "with black people."

In sum, the plaintiffs have proffered sufficient evidence to create genuine and material factual issues regarding whether the motel, in evicting the plaintiffs, interfered with their right to contract because of their race, in violation of 42 U.S.C. § 1981(a). Accordingly, we reverse the district court's grant of summary judgment in favor of the motel and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*