**Matthew DOBSON, Plaintiff,**

v.

**CENTRAL CAROLINA BANK AND TRUST COMPANY and Jeannette Fox, Defendants.**

**No. 1:02CV488.**

United States District Court, M.D. North Carolina.

Jan. 22, 2003.

Stephen Ashley Boyce, Winston–Salem, NC, for plaintiff.

Allan R. Gitter, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is currently before the Court on Defendant Central Carolina Bank and Trust Company and Defendant Jeannette Fox's ("Defendants") joint Motion for Judgment on the Pleadings [Document # 4]. Also before the Court is Defendants' joint Motion for Allowance to File an Audiotape with the Clerk [Docu-

ment # 6]. For the reasons set forth below the Motion for Allowance to File an Audiotape with the Clerk is DENIED, However, Defendants' Motion for Judgment on the Pleadings is DENIED in part and GRANTED in part.

## I. FACTUAL BACKGROUND

Relating the facts in the light most favorable to Plaintiff, it appears that Plaintiff, an African–American male, entered the Rural Hall branch of Central Carolina Bank and Trust Company late on a Friday afternoon for the purpose of paying off his check protection line of credit and to make a deposit in a checking account. (Complaint, ¶ 8) In processing Plaintiff's transactions, the bank teller informed him that the line of credit payoff amount would be slightly higher than what was shown on his statement. (Complaint, ¶ 9) She explained this was because the bank's policy was to post transactions performed after 2:00 p.m. to the next business day and, therefore, the payoff would need to account for interest that would accrue until the transaction was posted on Monday. (*Id.*) Plaintiff then paid the balance due on his credit line and deposited $400.00 into a checking account. (Complaint, ¶ 10) Subsequently, Plaintiff asked to speak with the manager and was directed to Jeannette Fox. (Complaint, ¶ 9) Plaintiff wished to speak with the manager because he either did not understand or did not agree with the bank's policies regarding the determination of a payoff of his account based upon a posting of transactions performed after 2:00 p.m.

Plaintiff did speak with Defendant Fox and he asserts that, at the time of his discussion with her, she was aware of the two transactions he had just completed in the teller line. (Complaint, ¶ 10) The substance of Plaintiff's discussion with Defendant Fox is not entirely clear, but at some point Defendant Fox provided Plaintiff with the bank's customer service number so that he could address any concerns that he had with the policy relating to the determination of the payoff of his account. (Complaint, ¶ 12; Answer, ¶ 12) The discussion ended when Plaintiff left Defendant Fox's office to call the customer service number on a phone inside the bank. (Complaint ¶ 12)

Plaintiff makes no reference to how long he was on the phone, but Defendants assert it was approximately 15 minutes. (Answer, ¶ 12) At some point while Plaintiff was on the phone, Defendant Fox became suspicious of his continuing presence in the bank and called the Forsyth County Sheriff's Department to report that a "suspicious black male" was inside the bank "pretending to use the phone." (Complaint, ¶ 13) Defendant Fox then requested that an officer respond immediately. (*Id.*) Defendant Fox gave the dispatcher a description of Plaintiff and his car, including its license plate number. (*Id.*) In the meantime, Plaintiff ended his phone call, got in his car, and left the bank without incident. (Complaint, ¶ 12, 13, 14) A short distance from the bank Plaintiff was stopped by two Sheriff's deputies who ordered him out of his car with guns drawn and searched him. (Complaint, ¶ 14) Plaintiff was subsequently released after the officers discovered his bank receipts and determined that no laws had been broken. (*Id.*) Based upon the facts of this case, Plaintiff filed claims against Defendants pursuant to 42 U.S.C. §§ 1981 and 1982 seeking actual and punitive damages for racial discrimination. Plaintiff has also asserted a state law claim of slander per se against Defendants. Defendants' Motion for Judgment on the Pleadings [Document # 4] pursuant to Fed.R.Civ.P. 12(c) is before the Court for consideration.

## II. STANDARD OF REVIEW

Defendants bring their Motion for Judgment on the Pleadings pursuant to Federal

Rule of Civil Procedure 12(c) which provides, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The rule also states that "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...." *Id.* In a judgment on the pleadings setting, a court is strictly constrained to base its decision solely on information obtained from the pleadings. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989) ("Judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue ...."); *accord, Institute For Scientific Information, Inc. v. Gordon and Breach, Science Publishers, Inc.,* 931 F.2d 1002, 1008 (3d Cir.1991).

At the stage of the proceedings when this matter was initially presented, the Court was and is still not prepared to treat Defendants' Motion for Judgment on the Pleadings as a Motion for Summary Judgment. Therefore, the Court will consider only the pleadings filed by the parties in determination of Defendants' motion. For this reason, the Court will deny Defendants' additional Motion for Allowance to File an Audiotape of Defendant Jeanette Fox's call to the Forsyth County Sheriff's Department, which she made while Plaintiff was still in the bank.

As to Defendants' Motion for Judgment on the Pleadings, the standard used for a motion made pursuant to Rule 12(c) is the same standard used for motions to dismiss made under Rule 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.,* 278 F.3d 401, 405–06 (4th Cir.2002). Consequently, the Court must "assume the facts alleged in the complaint are true" and draw all reasonable factual inferences in favor of the nonmoving party. *Id.* at

406. In other words, "dismissal is inappropriate unless it appears beyond doubt that the nonmoving party can prove no facts sufficient to support [his position]." *United States v. Matthews,* 1997 WL 716443, at *1 (4th Cir. Nov. 18, 1997), *cert. denied,* 523 U.S. 1075, 118 S.Ct. 1518, 140 L.Ed.2d 670 (1998) (unpublished opinion).

## III.  DISCUSSION

The Court will first summarize Defendants' arguments with respect to Plaintiff's claims, and will then address each claim in turn. Defendants argue for Judgment on the Pleadings because they believe Plaintiff has not shown purposeful discrimination or any explicit violation of 42 U.S.C. § 1981 and § 1982. Plaintiff disagrees with Defendants' interpretation of the statutes. With regard to section 1981, in order to support his claim, Plaintiff relies upon the analysis found in *Callwood v. Dave & Buster's Inc.,* 98 F.Supp.2d 694, 707 (D.Md., 2000), wherein the requirements for establishing a prima facie case of discrimination were expanded to allow plaintiffs to establish a claim if they can show that "they received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." Furthermore, with respect to his § 1982 claim, Plaintiff contends that Defendant Fox acted on her assumption that he was either a criminal or engaging in some criminal activity which led her to summon the police based solely upon his race, thereby violating § 1982 by "wrongfully interfer[ing] with his right to hold ... and convey ... his personal property." (Plaintiff's Brief in Opposition to Defendants' Motion For Judgment on the Pleadings, p. 14)

Defendants, pursuant to their Motion for Judgment on the Pleadings, also request dismissal of Plaintiff's state law claim of slander per se, contending that none of

Defendant Fox's statements fit within North Carolina's three-part definition of slander per se. Defendants further contend that even if Defendant Fox's statements constitute slander per se, Defendant Fox is entitled to qualified immunity because she made the statements to a member of law enforcement. Plaintiff's view is that Defendant Fox effectively "accused the Plaintiff of criminal activity" in that her statements indicate she "had obviously decided that the Plaintiff intended to rob the bank," and therefore the statements were slanderous per se. (*Id.*, p. 15) In response to Defendants' assertion of qualified immunity, Plaintiff argues that Defendant Fox's statements were not made in good faith "because they were made with a reckless disregard for the truth and with a high degreee [sic] of awareness that they were probably false," and are therefore not shielded by qualified immunity. (*Id.*, p. 16)

## A. The 42 U.S.C. § 1981 Claim

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors. 42 U.S.C. § 1981. The statute's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Since Plaintiff does not point to any direct evidence of discrimination, the question becomes whether he has proffered sufficient circumstantial evidence to satisfy the burden-shifting framework for Title VII cases established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir.2001). Under the *McDonnell Douglas* proof

scheme, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *Id.; St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Id.* If the defendant makes such a showing, the burden then shifts to the plaintiff to present evidence to prove that the defendant's articulated reason was pretext for unlawful discrimination. *Id.*

Defendants' Motion for Judgment on the Pleadings requires the Court to examine whether Plaintiff has sufficiently established his prima facie case. As mentioned, Plaintiff relies heavily on the opinion in *Callwood v. Dave & Buster's Inc.*, and urges the Court to follow its expanded three-part test for establishing a prima facie case of discrimination under § 1981, which requires plaintiffs to show:

(1) they are members of a protected class; (2) they made themselves available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; and (3) they did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that (a) they were deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or (b) they received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.

*Callwood*, 98 F.Supp.2d at 707.

The most significant portion of the *Callwood* prima facie test is subpart (3)(b), which effectively broadens the po-

tential plaintiffs with a § 1981 claim beyond merely those who can allege disparate treatment. Subpart (3)(b) makes it possible for plaintiffs to state a claim in situations where they are unable to demonstrate that they were subjected to disparate treatment as compared to other similarly situated individuals. The *Callwood* prima facie test was designed to "take account of the largely itinerant nature of the clientele of the retail food service enterprises, and thus the fact that, if the requirement that some comparison be made between plaintiffs and 'similarly situated persons outside the protected group' is applied with a stringency that is unrealistic, then few *bona fide* victims of discrimination would ever be able to succeed on a section 1981 claim arising in a restaurant setting or similar place of public accommodation."[1] *Id.* at 706. That is, the *Callwood* showing "allows a plaintiff to state a claim when similarly situated persons are not available for comparison, as will often be the case in the commercial establishment context." *Christian v. Wal–Mart Stores, Inc.,* 252

F.3d 862, 871–73 (6th Cir.2001) (examining closely the prima facie test crafted in *Callwood,* and adopting it in full).

In crafting its prima facie test, the *Callwood* Court also considered factors beyond the special circumstances surrounding commercial establishment claims (or, public accommodation claims, as the *Callwood* Court labeled them). The Court examined prima facie tests set forth by other courts, ultimately concluding those tests "erroneously collapse[d] the overall elements of a section 1981 *claim* with the elements of a *prima facie case*" and that such tests are therefore "inappropriate because the very point of the prima facie case requirement is to provide a basis for *inferring* the existence of a discriminatory motive," not to require a plaintiff to show up-front that the defendant had an intent to discriminate. *Callwood,* 98 F.Supp.2d at 705 (emphasis in original). Additionally, the *Callwood* Court bore in mind the Fourth Circuit's guidance "that the prima facie case requirement is essentially a 'channeling device'[2] which 'is not a diffi-

---

**1.** The *Callwood* court noted that other § 1981 prima facie tests were formulated for application in an employment discrimination setting. The court explained how the significant differences between claims arising in the employment context, as compared to those arising in the public accommodations context, gave rise to the need for a different prima facie test: "Employment decisions, by and large, are regularized and periodic, are made by supervisory personnel, and by their very nature are almost always documented, and thus preserved for sober examination. Consequently, employment decisions leave behind a paper trail of evidence which to a greater or lesser extent will be available during discovery or otherwise to a discrimination victim. It makes sense, therefore, to insist upon evidence of comparators-similarly situated applicants or employees not in the same protected class-in assessing the strength of the inference of a discriminatory motive which is essential to proof of the claim. In the restaurant context, in contrast, the interactions of a highly

mobile public with hostesses, waitpersons and managers are necessarily ad hoc and transient, are almost never with higher-ranking personnel of the enterprise, and are almost never documented in any meaningful sense. Given the ephemeral nature of interpersonal interactions in the public accommodations context, therefore, it may be wholly unrealistic to require a member of the protected class who suffers through what she perceives to be a shockingly discourteous and hostile experience, to identify victims of such outlandishly horrendous service who are not members of the protected class before the federally-guaranteed rights embodied in section 1981 may be vindicated." *Callwood,* 98 F.Supp.2d at 706 (citations omitted).

**2.** While not a free pass that exempts the plaintiff's ultimate burden from judicial review, the prima facie case requirement is the first step in a multi-stage proof scheme and should therefore not be a difficult requirement to satisfy. *Gibson,* 160 F.3d at 181.

cult requirement to satisfy ....'" *Id.* at 705–06 (quoting *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.* 160 F.3d 177, 181 (4th Cir.1998)).

Further, the *Callwood* Court engaged in a review of the legislative history of the Civil Rights Act of 1991, specifically examining the Act's effects on § 1981. *Id.* at 702–04. The court concluded the history "reveal[ed] that in amending section 1981 Congress reaffirmed the view that section 1981 is 'a critically important tool used to strike down racially discriminatory practices in a broad variety of contexts.'" *Id.* at 703 (quoting H. Rep. No. 102–40, pt. II, at 36 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 729 (Report of House Judiciary Committee on Civil Rights Act of 1991)). Although the *Callwood* Court did not specifically point to its review of legislative history as one of the considerations used in formulating its prima facie test, this Court finds the legislative history of § 1981 significant in assessing the merits of *Callwood*'s prima facie test.

The *Callwood* prima facie test is not foreign to the Fourth Circuit. *See Murrell,* 262 F.3d at 257–58. *Murrell* involved the application of § 1981 in a hotel accommodations setting. *Id.* After setting forth the elements needed in order for a plaintiff to make out a prima facie case in such a context, the court cited *Callwood* as a proposition different from the main proposition but sufficiently analogous to lend support and then parenthetically described *Callwood* as a "similar formulation ...." *Id.* In *Murrell* however, unlike the present case, the plaintiffs were able to point to comparators, that is, similarly situated individuals not in the same protected class, to enable them to allege disparate treatment. *Id.* at 258. Hence, the Fourth Circuit concluded "the plaintiffs were denied accommodations that were available to members outside of the protected class ..." and therefore did not have occasion to specifically address or rule on subpart (3)(b). *Id.*

■ After careful examination, the Court finds the analysis in *Callwood* to be sound and applicable in the present case. The *Callwood* prima facie test fills a gap that other § 1981 prima facie tests have neglected by taking into account situations where a plaintiff may be unable to point to similarly situated individuals for use in measuring whether a plaintiff was subject to disparate treatment. Additionally, the test would seem to be consistent with the Fourth Circuit's direction that a prima facie showing should be a channeling device, and not overly difficult to satisfy. In this vein, the *Callwood* prima facie test allows more flexibility and provides a broader avenue for determining who may state a claim of discrimination pursuant to § 1981. In addition, the *Callwood* approach follows the direction Congress has given, as set forth in the Civil Rights Act of 1991, which indicates that § 1981 is a tool to be used in a broad variety of contexts. Accordingly, the application of § 1981 should not be limited solely to situations where similarly situated individuals are available for comparison.

Here, there is no contention by Defendants that Plaintiff does not satisfy the first two elements of the prima facie showing, in that he is a member of a protected class, and that he made himself available to receive and pay for services ordinarily provided by Defendants to all members of the public in the manner in which they are ordinarily provided. As to the third element, that is, whether he enjoyed the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination, Plaintiff has alleged he was the only customer present in the bank and is therefore unable to compare his experiences to similarly situated

patrons.[3] Therefore, subpart (3)(b) applies and only requires Plaintiff to show that he received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.

■ The Court finds that in view of *Callwood,* Plaintiff has met his prima facie burden of making a showing, by a preponderance of the evidence, that he received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable. Based on the pleadings filed by both parties, it appears that after Defendant Fox was unable to satisfy Plaintiff's concerns about the determination of the amount of the payoff for his account, she attempted to hand him off to another party, that is, the bank's telephone customer service center, in order to resolve his concerns. Standing alone, these actions do not appear to have been markedly hostile or objectively unreasonable. However, relying solely on the pleadings and taking Plaintiff's allegations as true, Defendant Fox's subsequent actions of calling the Sheriff's department, reporting Plaintiff as a "suspicious black male," and requesting an officer to respond immediately could reasonably be viewed as causing Plaintiff to receive the bank's services in a markedly hostile and objectively unreasonable manner. Accord-

ingly, the Court cannot say that it appears Plaintiff can prove no facts sufficient to support his position that he was discriminated against on the basis of his race in violation of § 1981. Defendants' Motion for Judgment on the Pleadings is therefore DENIED as to this claim.[4]

**B. The 42 U.S.C. § 1982 Claim**

In its entirety § 1982 reads: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. "To effectuate the remedial purposes of the statute, the Court has broadly construed this language to protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and use property on an equal basis with white citizens." *City of Memphis v. Greene,* 451 U.S. 100, 120, 101 S.Ct. 1584, 1597, 67 L.Ed.2d 769 (1981). Both § 1981 and § 1982 "derive their operative language from the first section of the Civil Rights Act of 1866." *Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir.1996) (citing *Tillman v. Wheaton–Haven Recreation Ass'n, Inc.,* 410 U.S. 431, 439–40, 93 S.Ct. 1090, 1095, 35 L.Ed.2d 403 (1973)). Thus, due to "their common origin and purpose, § 1981 and

---

**3.** In their Answer Defendants deny Plaintiff's allegation that no other customers were present. However this issue is moot because, even if Plaintiff was not the only customer in the bank, *Callwood* would still be applicable since the alleged events took place in a commercial establishment context. In such a setting "the interactions of a highly mobile public with [employees] are necessarily ad hoc and transient, are almost never with higher-ranking personnel of the enterprise, and are almost never documented in any meaningful sense." *Callwood,* 98 F.Supp.2d at 706. Therefore, even if other customers had been present in the bank, it would likely be difficult for Plaintiff to meaningfully compare their

experiences with his own for purposes of showing discrimination among similarly situated individuals.

**4.** The Court also finds Plaintiff has sufficiently alleged that Defendant Central Carolina Bank and Trust Company is vicariously liable for Defendant Fox's actions because, at all times relevant to the action, she was an employee of Defendant Central Carolina Bank and Trust Company who was acting within the normal course and scope of her employment. (Complaint, ¶ 7, 15, 17). Therefore, the Court's denial of the Motion for Judgment on the Pleadings as to this claim is applicable to both Defendants.

§ 1982 are generally construed in tandem." *Id.* Consequently, the Court will again look to subpart (3)(b) of the *Callwood* test. Under § 1982 the inquiry is whether Plaintiff has put forth a prima facie case of discrimination, in the form of interference with his right to inherit, purchase, lease, sell, hold, or convey real or personal property, sufficient to survive Defendants' Motion for Judgment on the Pleadings. To satisfy subpart 3(b) in this context, Plaintiff must allege he was subjected to a markedly hostile and objectively unreasonable commercial establishment environment that interfered with his ability to exercise his real or personal property rights so as to rationally support an inference of unlawful discrimination.

Plaintiff alleges Defendants discriminated against him on the basis of his race and that the discriminatory conduct concerned his right to hold and convey personal property. (Complaint, ¶ 27, 28) Specifically, he contends that Defendant Fox considered his race while Plaintiff was engaged in paying off his credit line and making a deposit and that Defendant Fox assumed he was a criminal and summoned the police because of his race. Accordingly, Plaintiff invokes § 1982 as a cause of action because he contends Defendant Fox's conduct interfered with his right to hold and convey personal property, that is, his right in this instance to engage in protected activity with respect to his bank deposits and payments to his credit line account.[5]

Taking the allegations in Plaintiff's Complaint as true, the Court cannot say

that Plaintiff cannot prove facts sufficient to support a inference of discrimination arising from interference with his right to hold and convey personal property. As with the foregoing analysis concerning § 1981, the fact that Plaintiff completed his transactions before the alleged discrimination occurred is not controlling as to whether he can state a claim for violation of § 1982. Rather, it is the motivation behind the events which occurred while Plaintiff was still present in the commercial establishment that could potentially give rise to a set of facts supporting an inference of racial discrimination in violation of § 1982. Therefore, Defendants' Motion for Judgment on the Pleadings is DENIED as to this claim as well.[6]

### C. The Slander Per Se Claim

Plaintiff's slander per se claim is a state law claim over which this Court has supplemental jurisdiction because it forms part of "the same case or controversy" as his federally based claims and arises, alongside those federal claims, from a "common nucleus of operative fact." 28 U.S.C. § 1367; *Rosmer v. Pfizer Inc.*, 272 F.3d 243, 251 (4th Cir.2001). Plaintiff alleged that "[d]efendant Jeannette Fox slandered the Plaintiff in that she published false statements to someone other than the Plaintiff which, when considered alone and without innuendo, tended to damage the Plaintiff's reputation, discredit the Plaintiff and deter others from doing business with him." (Complaint, ¶ 33)

Under North Carolina law, slander per se is a false statement that is commu-

---

5. Following the Supreme Court's guidance that § 1982 is to be "broadly construed" to protect citizens' rights to "use [their] property," the Court finds that making a bank deposit and a payment to a credit line account can be construed as holding and/or conveying personal property. *Greene,* 451 U.S. at 120, 101 S.Ct. at 1597, 67 L.Ed.2d 769.

6. As with the § 1981 claim, Plaintiff has sufficiently alleged vicarious liability of Defendant Central Carolina Bank and Trust Company for the actions of Defendant Fox. Therefore the Court's denial of the Motion for Judgment on the Pleadings as to this claim is applicable to both Defendants.

nicated to a third person and amounts to: (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease. *Barker v. Kimberly–Clark Corp.*, 136 N.C.App. 455, 459–60, 524 S.E.2d 821, 824–25 (2000).

■ Plaintiff argues that "Defendant Fox accused the Plaintiff of criminal activity." (Plaintiff's Brief In Opposition To The Defendants' Motion For Judgment On The Pleadings, p. 15) As to what sort of criminal activity, Plaintiff argues that Defendant Fox "told the police dispatcher that the Plaintiff was acting suspiciously and that she had told the tellers not to take their cash drawers to the vault." (*Id.*) Even assuming Defendant Fox made such statements, they do not amount to accusations that Plaintiff committed any form of crime, much less a crime involving moral turpitude.

Plaintiff further contends Defendant Fox "had obviously decided that the Plaintiff intended to rob the bank" and that "[t]he police dispatcher well understood Defendant Fox's message ...." (*Id.*) Plaintiff cannot state a claim of slander per se merely by putting Defendant Fox's *thoughts*—or the police dispatcher's impression of Defendant Fox's thoughts—at issue. Rather, Plaintiff must point to actual *statements* which are slanderous per se. "Spoken communication to a third person of false and defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood is actionable slander ... [s]lander per se is an oral communication to a third person ...." *Averitt v. Rozier*, 119 N.C.App. 216, 218, 458 S.E.2d 26, 28 (1995) (internal quotation and citation omitted).

The Court finds Plaintiff's allegations do not point to any actual statements by Defendant Fox that would fall within North Carolina's three-part definition of slander per se. Nor can Plaintiff successfully state a claim of slander per se by offering an opinion as to what he believed were Defendant Fox's thoughts or what impressions of Defendant Fox's statements were drawn by a third party, such as the Sheriff department's dispatcher, in the facts presented here. Consequently, the Court must conclude on the facts of this case that Plaintiff can prove no facts sufficient to state a claim of slander per se under the requirements of North Carolina law. Therefore, Defendants' Motion for Judgment on the Pleadings as to Plaintiff's claim of slander per se is GRANTED.

## IV. CONCLUSION

For the reasons discussed above, Defendants' joint Motion for Allowance to File an Audiotape with the Clerk [Document #6] is DENIED. Additionally, Defendants' joint Motion for Judgment on the Pleadings [Document #4] is DENIED with respect to Plaintiff's claims filed pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1982. However, Defendants' Motion for Judgment on the Pleadings is GRANTED with respect to Plaintiff's slander per se claim. An Order consistent with this Memorandum Opinion will be filed herewith.

### ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants Central Carolina Bank and Trust Company and Jeannette Fox's joint Motion For Allowance To File Audiotape With The Clerk [Document #6] is DENIED;

IT IS FURTHER ORDERED that Defendants' joint Motion for Judgment on the Pleadings [Document #4] is DENIED in part with respect to Plaintiff's claims filed pursuant to 42 U.S.C. § 1981 and 42

U.S.C. § 1982. However, Defendants' joint Motion for Judgment on the Pleadings is GRANTED with respect to Plaintiff's slander per se claim, and the same is hereby DISMISSED.