**Janet M. MILLER, for Jamie M. Miller, Plaintiff–Appellant,**

v.

**SANTA CLARA COUNTY LIBRARY, Defendant–Appellee.**

No. 99–15620.

D.C. CV–97–20294–JF/PVT.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2001.

Decided Dec. 12, 2001.

Before B. FLETCHER, FERNANDEZ and PAEZ, Circuit Judges.

## MEMORANDUM [1]

This case involves a claim that the Americans with Disabilities Act ("ADA"), applies to disabled persons placed in job training programs and turns on whether the plaintiff-appellant's ward is a "qualified" person within the meaning of the Act. The plaintiff-appellant in this case, Janet Miller ("Miller"), alleges that the Santa Clara County Library ("Library") violated Title I of the ADA by failing to reasonably accommodate her son, who briefly worked at two branches of the Library while participating in a federally-funded summer jobs program during the summer of 1996. The district court granted summary judgment for the Library on the ground that Miller failed to present a prima facie case under the ADA. We affirm.

---

**1.** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## I.

Janet Miller is the conservator for her son, Jamie, who was born with Down's syndrome. His primary disabilities are sensory overload, auditory processing and retention deficiencies, and an expressive language deficit.

During the summers of 1995–98, Jamie participated in the federally-funded Summer Youth Employment and Training Program ("SYETP" or "the Program") in Sunnyvale, California. SYETP provides training classes and job experience and exposure for its participants. During the years in question, SYETP was overseen by the North Valley Job Training Consortium ("NOVA") and administered by the Department of Employment Development of the City of Sunnyvale. Participants in the Program were paid by the City of Sunnyvale with federal funds made available under the Job Training Partnership Act (codified at 29 U.S.C. § 1501 et seq.).

During the summer of 1995, Jamie did grounds work at the HOPE Rehabilitation Center and earned $ 639.91 through SYETP. In the summer of 1996, Jamie was initially placed by NOVA with the Los Altos branch of the Santa Clara County Library. On June 21, however, after four days of work, he was terminated because he was having trouble staying on task and needed constant supervision. The NOVA counselor offered to arrange for peer support and to visit the library branch twice per week (instead of the usual once per week), but the library staff decided to terminate him anyway.

On July 8, 1996, Jamie was assigned to the Cupertino branch of the Library, after working at the NOVA offices in the interim. This branch also terminated Jamie's employment after four days, again citing the need for greater supervision. According to Jamie's mother, the library staff refused her offer to find Jamie a job coach or to serve as his coach herself. Following his termination from the Cupertino library branch, Jamie worked for the remainder of the summer at the Salvation Army Day Camp, where his mother served as his job coach. Over the course of a few days, Jamie required less job coaching and eventually was able to function successfully on his own. All told, Jamie earned $ 331.58 from SYETP in 1996. During the summer of 1997, Jamie successfully worked as a library assistant at the Lynbrook High School Library, earning a total of $ 700.69 through the Program. A subsequent placement at the Veterans Hospital in Palo Alto during the summer of 1998 was also successful.

As Jamie's conservator, Janet Miller filed complaints with the Equal Employment Opportunity Commission ("EEOC") against the Cupertino and Los Altos libraries, alleging termination of employment in violation of Title I of the ADA. Neither the Library, NOVA, nor the City of Sunnyvale was named in these complaints. On December 31, 1996, the EEOC issued a Dismissal and Notice of Rights for each complaint, concluding that they failed to establish a violation of the statute. Miller then filed suit in the district court on March 31, 1997. Following several amendments to her complaint,[2] Miller named the Library as the sole defendant (again purposely declining to sue NOVA or the City of Sunnyvale, with whom she had no quarrel).[3] In the

---

**2.** Miller was eventually advised that the two library branches did not exist as legal entities, and that the Library was the proper party to be sued.

**3.** Counsel for Santa Clara County tendered the defense of the matter to NOVA because of a sub-agent agreement between the Los Altos branch and NOVA with respect to SYETP. No such agreement existed for the Cupertino branch.

amended complaint, Miller sought lost wages and damages for the humiliation suffered by her son, on the ground that the Library had violated Title I of the ADA by failing to reasonably accommodate Jamie.

In January 1999, the district court granted the Library's motion for summary judgment. Miller now appeals.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.

The district court's grant of summary judgment is reviewed de novo. *Braunling v. Countrywide Home Loans, Inc.*, 220 F.3d 1154, 1156 (9th Cir.2000). A motion for summary judgment should be granted if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The motion should not be granted, however, if a reasonable jury, viewing the evidence in the light most favorable to the nonmoving party, could resolve a material issue in Miller's favor. *Id.* at 248–49, 106 S.Ct. 2505.

## III

Under Title I of the ADA, a plaintiff must be a "qualified individual with a disability." Specifically, a plaintiff must be "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Library does not dispute that Jamie is disabled but asserts he is not qualified with or without accommodation. Janet Miller has offered evidence of Jamie's experience in other employment situations,

including prior and subsequent library work, which appears to demonstrate his capacity to perform the essential functions of such work with reasonable accommodation (specifically, the help of a job coach). But he does not know the alphabet, is difficult to work with and cannot perform without a qualified person at his side.

Under the facts as alleged by Miller, the Library clearly knew (or should have known) that Jamie was disabled and was experiencing workplace problems because of his disability. In addition, even if the Library could reasonably claim ignorance of Jamie's inability to request a reasonable accommodation himself, Janet Miller proffered the suggestion of a job coach to the Library. Miller alleges that in response, the Library basically turned a deaf ear to the prospect of any potential accommodations, other than to terminate Jamie on two occasions. It refused to discuss any accommodation.

The Library contends that the proposed solution of a job coach (as well as any other accommodation) would have placed an undue burden on its operations.[4] Furthermore, the Library argues that Miller was less-than-forthcoming about Jamie's disability and his capacity to work without individualized supervision. In its view he was not a "qualified individual".

## IV

Significantly, the district court declined to reach the threshold question whether the Library's role in SYETP created an employment relationship with Jamie in the first place. Specifically, the district court reasoned:

Given the facts that Jamie's placement with Defendant was through a federally

---

4. The district court also concluded that Miller's proposal "was not a reasonable accommodation as a matter of law," in part because

requiring the use of a job coach would be unduly burdensome for the Library.

funded program aimed at helping disadvantaged youths, and that Defendant did not pay any part of Jamie's salary, it is unclear whether Defendant can be considered Jamie's employer. No reported decisions address this precise issue. However, even assuming for the purposes of this motion that Defendant was Jamie's employer, the Court concludes that Defendant is entitled to summary judgment because Plaintiff has failed to establish a *prima facie* case of discrimination under the ADA.

For its part, the Library contends that it is not subject to ADA liability in this case because it was not Jamie's employer. *See* 42 U.S.C. § 12111(2) and (5). According to the Library, it should not be penalized for its decision to participate in SYETP, and Miller should not be allowed "to make a federal case" out of an incident involving a few days in a temporary summer employment program. Towards this end, it points to the fact that it never actually hired, paid or terminated Jamie. Instead, the Library contends that NOVA was the entity responsible for hiring Jamie, assigning him to various worksites, and ultimately terminating him when the program concluded. Furthermore, NOVA arguably engaged in a process to reasonably accommodate Jamie by first seeking a volunteer job coach and ultimately by reassigning him to different sites.

Although we have serious questions as to whether the Library legally functioned as Jamie's employer in this case, we do not address the issue since the district court declined to do so and the record is not well developed on the issue.

## V

What clearly is at issue is whether Jamie is a "qualified individual" with or without accommodation. We conclude that he is not. The record is clear that he cannot perform without a job coach at his elbow and that he does not have the basic, rudimentary knowledge required for library work. "Reasonable accommodation" does not encompass within its meaning the use of an additional person to help the clearly unqualified who cannot perform on their own.

We do not reach the difficult policy issue of whether Congress intended participants in programs such as SYETP to be covered by the ADA. Our decision turns simply on the determination that Jamie is not a "qualified individual". We do note, however, that the laudable program to give job experience and training to disabled persons should be encouraged, not discouraged. Agencies that agree to cooperate should be praised, not sued. We are concerned that permitting entities like the Library that voluntarily participate in programs such as SYETP to face liability under the ADA could implicate a difficult policy issue. Fortunately, we need not decide here whether the ADA applies.

We go no further than to find that Jamie is not a "qualified" individual.

AFFIRMED.