**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**DOLLAR GENERAL CORPORATION and Dolgencorp, Inc., d/b/a Dollar General Stores, Defendants.**

**No. 1:01 CV 918.**

United States District Court, M.D. North Carolina.

March 20, 2003.

Gwendolyn Young Reams, Equal Employment Opportunity Commission, Wash-

ington, DC, Mindy E. Weinstein, Bobby C. Simpson, Kara Gibbon Haden, Equal Employment Opportunity Commission, Charlotte, NC, Kerith Cohen, Equal Employment Opportunity Comm., Raleigh, NC, for Plaintiff.

Charles Matthew Keen, Debra Loyd Dewar, Ogletree Deakins Nash Smoak & Stewart, P.C., Raleigh, NC, Ingrid Blackwelder Erwin, Nexsen Pruett Jacobs & Pollard, Llp, Greenville, Sc, Keith D. Frazier, Ogletree Deakins Nash Smoak & Stewart, P.C., Nashville, TN, for Defendant.

### MEMORANDUM OPINION

BEATY, District Judge.

## I. INTRODUCTION

This matter comes before the Court on cross Motions for Summary Judgment from Defendants Dollar General Corporation and Dolgencorp, Inc. (collectively referred to as "Dollar General" or "Defendants") [Document # 24] and from Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") [Document # 28]. For the following reasons, both motions are DENIED in full.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The EEOC brings this action on behalf of Bobbie Bost, a 45-year-old woman who is moderately mentally retarded. (Pl.'s Mem. in Opp'n to Defs' Mot. for Summ. J. at 2; Br. in Supp. of Defs' Mot. for Summ. J. at 1.) Ms. Bost was hired by Dollar General on April 13, 2000 for a position at Defendants' store # 4905 in Granite Quarry, North Carolina. (Mem. in Supp. of Pl.'s Mot. for Summ. J., at Ex. 11, No. 1.) The EEOC alleges Dollar General discriminated against Ms. Bost based on a disability in violation of the Americans with Disabilities Act ("ADA") when it terminated her employment on July 24, 2000. (Id. at 9; Id. at Ex. 11, No. 2.)

In March of 2000 Robin Onuoha, began working with Ms. Bost as a supported employment coach (Id. at 3.), also known as a job coach. See 29 C.F.R. pt. 1630, app. at § 1630.9 (describing job coach as a type of supported employment). As Ms. Bost's job coach, one of Onuoha's functions was to assist Ms. Bost in finding employment. (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3.) In April 2000, Onuoha saw a "help wanted" sign posted in the window of the Dollar General store in Granite Quarry, NC. (Id.) With Onuoha's assistance, Ms. Bost completed and submitted a job application to Kenyatta Smith, who was the Assistant Store Manager. (Id.) Based on Ms. Bost's appearance and speech, Smith concluded that Ms. Bost was "handicapped." (Id.) Onuoha explained the supported employment process to Smith, that is, that she would be with Ms. Bost at all times while Ms. Bost was working and that if Ms. Bost could not perform a task independently, Onuoha would assist her in performing it. (Id.) Onuoha further explained that Dollar General would not pay for Onuoha's services. (Id.) Approximately two weeks later, Smith advised Onuoha that she had spoken with Ricky McCray, the Dollar General District Manager for the Granite Quarry store, and that McCray had approved hiring Ms. Bost. (Id.) At the time of Ms. Bost's hire, Smith believed that Ms. Bost could not operate a cash register and could not unload boxes from delivery trucks. (Id.) During her period of employment, Ms. Bost was never asked to operate a cash register or unload trucks. (Id. at 4.)

Working twelve hours a week, Ms. Bost earned a weekly amount of $66. (Id.) The job functions Ms. Bost performed consisted of cleaning the bathroom, dusting, sweeping, mopping, folding clothes, picking

up trash, carrying boxes to the dumpster, straightening, and putting merchandise away in its proper place. (*Id.;* Br. in Supp. of Defs' Mot. for Summ. J. at 5.) Onuoha assisted Ms. Bost in the performance of her job by repeating instructions given by the manager or supervisor, and arranging Ms. Bost's work area so that she could perform assigned tasks more easily. (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 4; Br. in Supp. of Defs' Mot. for Summ. J. at 5.) Defendant acknowledges that the job functions Ms. Bost engaged in "were performed satisfactorily," but contends Ms. Bost was not capable of "performing all essential functions of the clerk position." (Mem. in Supp. of Pl.'s Mot. for Summ. J. at Ex. 11, No. 4.)

In May 2000, Kathryn Von Cannon became Manager of the Granite Quarry Store. In this capacity, Von Cannon was responsible for the overall operation of the store, and all store employees reported to her. (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 5.) Von Cannon's understanding was that she needed the approval of District Manager McCray to terminate employees. (*Id.*) According to Von Cannon, she terminated Ms. Bost after McCray, who was visiting the store that day, approached her and, referring to Ms. Bost, stated, "[a]re we paying for that?" whereupon Von Cannon replied yes and McCray then stated, "[w]ell, get rid of it." (Von Cannon Dep. at 51–52; *see also* Smith Dep. at 18–22; *also* Onuouha Dep. at 33–35.) McCray, who is no longer a Dollar General employee, denies making any such statements and, indeed, maintains that he had nothing to do with the termination decision. (McCray Dep. at 43–44, 88.)

On the termination paperwork, Von Cannon indicated that she fired Ms. Bost due to "lack of work" and "payroll." (Mem. in Supp. of Pl.'s Mot. for Summ. J.

at 6.) However, in her deposition Von Cannon stated that these reasons were false and testified that, in order to avoid hurting Ms. Bost's feelings, she "lied and told her that [she] had to let her go because of [the store's] payroll." (*Id.*) Within the month preceding Ms. Bost's termination and the month following her termination, Dollar General sought applicants and hired individuals for clerk positions in the Granite Quarry store. (*Id.* at 7.)

As indicated in its response to Plaintiff's interrogatories, Dollar General's position on the circumstances surrounding Ms. Bost's termination is that:

> [w]hile visiting Store No. 4905, Mr. McCray observed Ms. Bost and questioned whether she could perform all of the essential functions of the clerk position. He then spoke with the Store Manager, Kathryn Von Cannon, to determine whether Ms. Bost was on the Defendant's payroll or whether she was working at the facility through a program whereby Defendant was not responsible for her wages. Upon determining that she was on the payroll, unable to perform the essential functions of the job, and in light of the labor costs at the store in question, he directed Ms. Von Cannon to terminate Ms. Bost's employment.

(Mem. in Supp. of Pl.'s Mot. for Summ. J. Ex. 18, at No. 5.) As this statement indicates, in the context of this litigation Dollar General has asserted that Ms. Bost was terminated because she "could not perform the other essential functions of the clerk position with or without a reasonable accommodation ..." and therefore she "was not a qualified individual with a disability under the ADA ...." (Br. in Supp. of Defs' Mot. for Summ. J. at 17.) Defendants move for summary judgment solely on this basis arguing that, because Plaintiff cannot show that Ms. Bost was a quali-

fied individual with a disability, Plaintiff cannot establish its prima facie case. On the other hand, Plaintiff moves for summary judgment on the entire issue of liability, arguing: 1) that Plaintiff has established all the elements of its prima facie case, including showing that Ms. Bost was a qualified individual with a disability, 2) that Defendants have not produced evidence that it discharged Ms. Bost for a legitimate, non-discriminatory reason, and 3) even if Defendants have produced evidence of a legitimate, non-discriminatory basis for Ms. Bost's discharge, the reason proffered by Defendants is pretextual. Alternatively, Plaintiff directly addresses the opposite side of Defendants' Motion for Summary Judgment argument by contending that the Court should find as a matter of law that Ms. Bost is a qualified individual with a disability and grant summary judgment as to that portion of Plaintiff's prima facie case.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* As a result, the Court will only enter summary judgment in favor of the moving party when " 'the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances.' " *Campbell v. Hewitt,*

*Coleman & Assocs., Inc.,* 21 F.3d 52, 55 (4th Cir.1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,* 381 F.2d 245, 249 (4th Cir.1967)).

When ruling on a summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party, according that party the "benefit of all reasonable inferences." *Bailey v. Blue Cross & Blue Shield of Virginia,* 67 F.3d 53, 56 (4th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). The moving party bears the initial burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Catawba Indian Tribe of S.C. v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). Once the moving party has met this burden, the adverse, or non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* In so doing, the adverse party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12, 91 L.Ed.2d 202; *Catawba Indian Tribe,* 978 F.2d at 1339. In other words, the non-moving party must show "more than ... some metaphysical doubt as to the material facts," for the mere existence of a scintilla of evidence in support of his position is insufficient to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Catawba Indian Tribe,* 978 F.2d at 1339.

### B. Proof Scheme

Courts have established two proof schemes for cases of discriminatory discharge based on disability, depending on

whether there is direct evidence of discrimination. *See e.g. Dobson v. Central Carolina Bank and Trust Co.,* 240 F.Supp.2d 516 (M.D.N.C. 2003) (citing *Murrell v. Ocean Mecca Motel, Inc.,* 262 F.3d 253, 257 (4th Cir.2001)). In the present case there is some evidence of direct discrimination, namely District Manager McCray's alleged statements made in reference to Ms. Bost wherein he asks Store Manager Von Cannon, "[a]re we paying for that?" and, upon Von Cannon's affirmative response, McCray states "[w]ell, get rid of it …." However, this evidence is disputed. Therefore, the Court will proceed under the more traditional burden-shifting proof scheme of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 57–58 (4th Cir.1995) (extending *McDonnell Douglas* to ADA claims). Under the *McDonnell Douglas* proof scheme, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *Murrell,* 262 F.3d at 257; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Murrell,* 262 F.3d at 257. If the defendant makes such a showing, the burden then shifts to the plaintiff to present evidence to prove that the defendant's articulated reason was pretext for unlawful discrimination. *Id.* In making this final determination, a court may "consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom …." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (quotation omitted). A court may also "infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.*

at 147, 120 S.Ct. at 2108. Finally, although the evidentiary burdens shift back and forth under the *McDonnell Douglas* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

### C. Qualified Individual With a Disability

■ The ADA prohibits a covered employer from discriminating "against a qualified individual with a disability because of the disability of such individual …." 42 U.S.C. § 12112(a). Therefore, to establish a prima facie case of discriminatory firing, "a plaintiff must prove: (1) he has a disability; (2) he is a qualified individual; and (3) in discharg[ing] him, his employer discriminate[d] against [him] because of [his] disability." *Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 686 (4th Cir.1997) (alterations by *Martinson* court) (quotations omitted). As mentioned, both sides have moved for summary judgment as to the issue of whether Ms. Bost was a "qualified individual with a disability." A grant of summary judgment in favor of Defendants would require dismissal of the entire action, a grant of summary judgment in favor of Plaintiff would establish two components of its prima facie case. Since they argue opposite sides of the same issue, the Court will address both sides' Motions for Summary Judgment contemporaneously.

In order to prove Ms. Bost was a "qualified individual with a disability," Plaintiff must prove that Ms. Bost is: 1) an individual with a disability as defined by the ADA; and 2) she could perform the essential functions of the employment position that she held or desired, with or without reasonable accommodation. 42 U.S.C.

12111(8). As to the first element, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The ADA does not define the term "substantially limits," but the EEOC's regulatory definition states that the term means:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). According to the EEOC's Interpretive Guidance for this regulation, "major life activities" are those "basic activities that the average person in the general population can perform with little or no difficulty ..." including, but not limited to, "caring for oneself, performing manual tasks ..., speaking ..., [and] learning ...." 29 C.F.R. pt. 1630, app. § 1630.2(i).

In their Brief in Support of their Motion for Summary Judgment, Defendants state that: "[s]olely for the purposes of this motion, Dollar General will assume that there is sufficient evidence that Ms. Bost had a disability in July 2000, as defined in the ADA, to survive summary judgment on that issue." However, in their Brief in Opposition to Plaintiff's Motion for Summary Judgment, Defendants revisit the issue by first "conced[ing] that mental retardation is an impairment under the ADA guidelines ..." then making the narrow argument that "the EEOC has not produced any witness who can testify in a competent manner as to the major life activities in which it contends Bost is substantially limited." Whether or not the EEOC has produced the precise types of witnesses Defendants believe are necessary to prove this element is irrelevant; when looking at "the entire record," the evidence adduced during discovery plainly supports the EEOC's contention that "Ms. Bost is substantially limited in a wide range of major life activities, including thinking, learning, caring for oneself and communication." (Pl.'s Reply to Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J. at 1.) Such evidence includes numerous medical records which reveal, among other things, that Ms. Bost has never lived independently and, during 2000, she lived in a group home where she required 24–hour supervision. (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 2, Exs. 6, 9.) Further, Ms. Bost's mother has been appointed as her legal guardian because the Superior Court of Cabarrus County, North Carolina determined, "in the exercise of its jurisdiction for the appointment of guardians of incompetent persons ..." that Mary H. Bost was to be "fully authorized and entitled under the laws of North Carolina to have the custody, care and control of the ward [Ms. Bobbie Bost]." (Pl.'s Reply to Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J. at 2, Ex. 25.) Finally, Ms. Bost's deposition itself also demonstrates that she is substantially limited in major life activities, including communicating and thinking. Accordingly, the Court finds Plaintiff has shown that Ms. Bost has a mental impairment that substantially limits one or more of her major life activities and, therefore, there is no genuine issue of material fact as to whether Ms. Bost had a disability during the span of her employment with

Defendants.[1]

As noted, the second element Plaintiff must establish in order to prove Ms. Bost was a "qualified individual with a disability" is a showing that she could perform the essential functions of the employment position that she held or desired, with or without reasonable accommodation. In support of its approach to this issue Plaintiff relies on the ADA's definition of "qualified individual with a disability," by stating that such a person is one who, "'with or without reasonable accommodation, can perform the essential functions of *the employment position that such individual holds* or desires.'" (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 12 (quoting 42 U.S.C. § 12111(8)) (emphasis supplied by Plaintiff).) Plaintiff's contention is that "Dollar General hired Bost for a position that did not require operation of a cash register or movement of heavy objects ..." and "[t]hat position was the employment position Bost 'held' within the meaning of the ADA." (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 13.) In contrast, Defendants' primary argument is that Ms. Bost was terminated because she could not perform the essential functions of Dollar General's store clerk position.[2] (Br. in Supp. of Defs.' Mot. for Summ. J. at 8.) Defendants point out that Dollar General stores have only three officially titled positions: manager, assistant manager, and clerk. (*Id.* at 2.) They maintain Ms. Bost was hired for the clerk position and therefore was required to perform the essential functions of that position as outlined in Dollar General's manual of Standard Operating Procedures ("SOP"). (*Id.* at 3–4.)

Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

---

1. Thus, Plaintiff has satisfied the first element of the prima facie requirements set forth in *Martinson* for establishing a claim under the ADA. *See Martinson* 104 F.3d at 686. However, this has no bearing on the remaining issue on which both Plaintiff and Defendants request that the Court grant summary judgment, namely, whether or not Ms. Bost was a "qualified individual" for purposes of the ADA.

2. As a preliminary matter, the Court notes that this entire line of argument is rather suspect considering the evidence which indicates Dollar General's justification for Ms. Bost's discharge has changed significantly since the discharge occurred, including the fact that the reasons offered at the time of discharge, "lack of work and payroll," were false. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir.2001) ("the fact that Sears has offered different justifications at different times for its failure to hire Santana is, in and of itself, probative of pretext."). The Court is mindful of the fact that this change in justification speaks most directly to the issue of pretext, which this opinion does not reach. Nonetheless it seems relevant, in attempting to determine the nature of the position which Ms. Bost held, that Dollar General failed to express dissatisfaction with her *qualifications* at any time during her employment or upon her termination. (Onuoha Dep. at 32–35.) If Ms. Bost was not qualified for the store clerk position, but this was never expressed to her or anyone else, then this would indicate that the qualifications essential for the store clerk position were not, in fact, essential for the particular position Ms. Bost actually held.

29 C.F.R. § 1630.2(n)(3). Thus, the employer's judgment as to which functions are essential and written job descriptions prepared before advertising or interviewing applicants are two *possible* types of evidence for determining the essential functions of a position. However, as indicated by the EEOC's Interpretive Guidelines, such evidence is not to be given greater weight simply because it is included in the non-exclusive list set out in 29 C.F.R. § 1630.2(n)(3). *See* 29 C.F.R. pt. 1630, app. § 1630.2(n) ("Greater weight will not be granted to the types of evidence included on the list than to the types of evidence not listed."); *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir.1998) ("We decline to apply conclusive effect to either the job description or [employer's] judgment as to whether [a particular function] is essential ...."). The Court finds that, as a matter of law, the position Ms. Bost held, whether labeled "clerk" or not, was a modified position that did not contemplate that she perform all the "essential functions" described in Dollar General's SOP manual.[3]

First, Dollar General itself gives some indication that the store clerk job description of essential functions is not accurate or, at a minimum, not applicable in all situations. One of the essential functions described is to "[a]ssist in setting and maintaining company plan-o-grams/programs," yet Dollar General states that "it appears as though managers and assistant managers were primarily responsible for setting the planograms and clerks were responsible for following it. In addition, there was some testimony that some store managers permitted certain clerks to avoid this task." (Br. in Supp. of Defs.' Mot. for Summ. J. at 3, n. 3.) Also, in a large store, Dollar General notes that "it may be possible, from a payroll standpoint, to hire a clerk who would not perform every single duty of the clerk position." (*Id.* at 11, n. 9.) Finally, Manager Von Cannon testified that she once hired an individual to perform only one of the "essential functions" of the clerk position, namely, helping to unload the weekly delivery truck. (Von Cannon Dep. at 119–20.)

Other factors from 29 C.F.R. § 1630.2(n)(3)'s list of evidence that may be used in determining whether a function is essential are equally illustrative. Concerning the "consequences of not requiring the incumbent to perform the function," there is evidence that other employees were available to operate the register and Ms. Bost's manager "never thought to put" her on the register. (Von Cannon Dep. at 45, 91.) Moreover, mornings were slow and there is no evidence that Dollar General needed two people to run registers in the mornings. (McCray Dep. at 93; Von Cannon Dep. at 86.) Further, District Manager McCray, whom Dollar General credits with the decision to discharge Ms. Bost,[4] testified that in his opinion an em-

**3.** Defendants raise an argument that "[a]s a matter of law, operating the cash register is an essential function of the clerk position ..." but, as a caveat to that sentence, they note that "[a]t a bare minimum, the question is a disputed issue of fact that necessitates denial of the EEOC's motion." (Br. in Opp'n to Pl.'s Mot. for Sum. J. at 7.) Essentially then, Defendants wish to have the underlying question, that is, the nature of the position Ms. Bost held and its essential functions, interpreted as both a question of law and a question of fact.

The Court views the issue as a question of law and will analyze it accordingly.

**4.** As mentioned above, in a response to one of Plaintiff's interrogatories Dollar General stated that "[w]hile visiting Store No. 4905, Mr. McCray observed Ms. Bost and questioned whether she could perform all of the essential functions of the clerk position .... Upon determining that she was on the payroll, unable to perform the essential functions of the job, and in light of the labor costs at the store in question, he directed Ms. Von Cannon to ter-

ployee should not be discharged because he or she could not operate a cash register or unload trucks. (McCray Dep. at 130.) As for "the work experience of past incumbents in the job; and/or the current work experience of incumbents in similar jobs," it is significant that Dollar General employed other people who did not perform cash register or truck unloading functions in their stores. (Von Cannon Dep. at 119–20; Terek Dep. at 79.)

In finding that the position Ms. Bost held was a modified position that did not contemplate that she perform all the "essential functions" described for the "clerk" position, the Court is also guided by evidence concerning Ms. Bost's hiring and her day-to-day performance. Dollar General hired[5] Ms. Bost to perform a job that included stocking, cleaning, re-shelving misplaced merchandise, and related duties, but that specifically did not include cash register operation or movement of heavy objects. (Smith Dep. at 94–97; *see also* Onuoha Dep. at 18–20.) Defendants provide no witnesses to refute the evidence that Ms. Bost was hired to perform a job that did not include cash register or truck unloading duties, and no witnesses indicate

that she was hired to perform all the "essential functions" enumerated in Dollar General's SOP for the standard "clerk" position. With the assistance of her job coach, Ms. Bost was able to perform all of her assigned duties. (Von Cannon Dep. at 46–67; Smith Dep. at 71; *see also* Grimely Dep. at 125.) Indeed, the Store Manager for the majority of Ms. Bost's employment tenure, Kathryn Von Cannon, testified that she was "very pleased with ... [Ms. Bost's] job performance, and for the simple fact that when she got through, she would come find something else to do or ask you for something else to do," and, further, that Ms. Bost "would do whatever needed to be done." (Von Cannon Dep. at 43, 47.) Finally, Dollar General never counseled or disciplined Ms. Bost as a result of her job performance. (Onuoha Dep. at 46; *see also* Von Cannon Dep. at 46; McCray Dep. at 91; Smith Dep. at 76–77.) Presumably then, Ms. Bost was satisfactorily performing the duties of the position she held.[6]

Lastly, in analyzing the nature of the position Ms. Bost held, it is significant that Dollar General failed to follow its

---

minate Ms. Bost's employment." (Mem. in Supp. of Pl.'s Mot. for Summ. J. Ex. 18, at No. 5.)

5.  Kenyatta Smith, as Assistant Manager of the Granite Quarry store, was the Dollar General representative who interviewed Ms. Bost and, acting within her authority, hired her. To the minimal extent Dollar General contends that Ms. Smith could not "impliedly waive[ ] any essential functions Bost could not perform by hiring her" because "[t]he EEOC has no support for its theory that essential functions can be manipulated so casually, particularly by low-level management employees," (Br. in Opp'n to Pl.'s Mot. for Summ. J. at 5–6.), the Court relies on *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), which Plaintiff cites. There the Supreme Court stated, "[a] tangible employment action constitutes a significant

change in employment status, such as hiring, firing, failing to promote ..." and held that "a tangible employment action taken by [a] supervisor becomes for Title VII purposes the act of the employer." *Ellerth*, 524 U.S. at 761–62, 118 S.Ct. at 2268–69, 141 L.Ed.2d 633. This Court further notes that, after Ms. Smith hired Ms. Bost, two different Store Managers retained her in the position and there is no evidence that Dollar General considered any of these three individuals to be in violation of company policies or that the company took any action taken against them related to the hiring or retention of Ms. Bost.

6.  Defendants admit as much in a response to a request for admissions, stating that "[t]hose limited duties that Ms. Bost could perform were performed satisfactorily." (Mem. in Supp. of Pl.'s Mot. for Summ. J., Ex 11 at 4.)

affirmative obligation to engage in the "interactive process" to determine what, if any, reasonable accommodation would enable Ms. Bost to perform any "essential functions" that she was allegedly failing to perform. *See* 29 C.F.R. § 1630.2(*o*)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation."); *Humphrey v. Memorial Hosps. Assoc.*, 239 F.3d 1128, 1137 (9th Cir.2001) ("Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations."); *accord Walter v. United Airlines, Inc.*, 232 F.3d 892 (Table), 2000 WL 1587489, *4 (4th Cir. Oct.25, 2000). Dollar General was required to engage in this process regardless of whether the essential functions in question were those of the job for which Ms. Bost was hired or those that Dollar General now asserts Ms. Bost should have been able to perform. The logical inference to be drawn from Dollar General's failure to act is that it did not engage in the interactive process because it did not, at the time, expect Ms. Bost to perform any functions other than those she had been performing.

■■■ Accordingly, with regard to the issue of whether Ms. Bost was a qualified individual with a disability, the Court concludes that the appropriate logic is similar to cases where a re-assignment/restructuring of the job has occurred and "the rele-

vant inquiry must be [her] qualifications to perform that work in which [she] was engaged when the alleged discrimination occur[red]." *Taylor v. Garrett*, 820 F.Supp. 933, 938 (E.D.Pa.1993); *Valdez v. Albuquerque Pub. Schs.*, 875 F.Supp. 740, 745 (D.N.M.1994) ("If [defendant] restructured [plaintiff's] duties to accommodate his disability ... I cannot see how [defendant] can ... claim [plaintiff] was still required to perform tasks eliminated by the restructuring."). It seems apparent that the ADA's focus is on the employment position that an individual *holds*. While an employer's description of a position and its statement of essential functions are to be taken into account in determining the nature of the position held, the essence of the inquiry requires a logical, case-by-case examination involving a common sense consideration of various factors, such as what an employee actually does and what she was hired to do. Here, a number of factors indicate that the position Ms. Bost held did not entail cash register or truck unloading duties. Namely, these factors include Defendants' admissions that the list of "essential functions" of the clerk position is inapplicable in some situations, the fact that the consequences of not requiring Ms. Bost to perform register and truck unloading functions never proved detrimental to Dollar General, the fact that there were other "clerks" hired for limited functions and, finally, the fact that Ms. Bost was specifically hired with knowledge on Dollar General's behalf that she would be performing only certain functions, all of which she carried out satisfactorily.[7] Therefore,

---

7. Also for these reasons, *Johnson v. Maryland*, 113 F.3d 1232 (Table), 1997 WL 240823 (4th Cir. May 12, 1997), which Defendants cite, is distinguishable. There the plaintiff, who had been a Maryland Correctional Officer, was discharged when he could not qualify as proficient with firearms due to disability-induced

tremors in his hands. In a short unpublished decision, the Fourth Circuit declined to accept the plaintiff's argument that "qualification with firearms [was] not a true job requirement because, in [plaintiff's] fourteen years of service, he had never held a weapons card [i.e., certification that he was qualified

the Court finds that the position Ms. Bost held, whether labeled "clerk" or not, was a modified position[8] which did not contemplate that she perform all the "essential functions" of the clerk position, as described in Dollar General's SOP manual, but rather, required that she carry out only the functions she was hired to, and did, perform.[9]

■ Having examined the nature of the employment position Ms. Bost held and concluding that, with an accommodation, she could perform all of its essential functions, the final step in determining whether Ms. Bost was a "qualified individual with a disability" is for the Court to examine the reasonableness of her accommodation. The ADA requires a reasonable accommodation be made for a known physical or mental limitation of a qualified disabled individual unless the accommodation would impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A). According to EEOC regulations, "reasonable accommodation" means "[m]odifications or adjustments ... that enable a qualified individual with a

with firearms]." *Johnson*, 1997 WL 240823 at *1. Unlike the present case where the facts indicate that operation of the cash register and truck unloading were not essential functions of the position Ms. Bost held, in *Johnson* "the evidence before the district court established that qualification with firearms [was] an essential function . . . ." *Id.*

8. Plaintiff also raises an alternative argument that genuine issues of material fact exist as to whether Ms. Bost could indeed perform Dollar General's listed "essential functions" of the "clerk" position assuming, *arguendo,* that was the position for which she was hired. (*See* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 15–19.) In light of the Court's finding that Ms. Bost was hired for a modified position that did not require that she perform all the "essential functions" described in Dollar General's SOP definition of the clerk position, it is not necessary for the Court to analyze whether Ms. Bost could perform all Dollar General's enumerated "essential functions" of the clerk position.

9. As an alternative argument, Defendants counter Plaintiff's contention that Ms. Bost could perform the essential functions of a modified store clerk position by arguing that "to the extent Dollar General permitted Ms. Bost to continue in its employment as a clerk for a short period of time without performing every single function of that position, it did not, thereby, eliminate those essential functions or otherwise concede that they were not, in fact, essential to the clerk's position." (Br. in Supp. of Defs.' Mot. for Summ. J. at 14.) Defendants base this stance on a string cite of cases which, they contend, represent a princi-

ple that "where an employer has gone above and beyond the requirements of the ADA by, for example, temporarily eliminating an essential job function to attempt to assist a particular individual, the EEOC should celebrate, rather than attempt to punish, that action." (*Id.* at 13.) Many of the cases are inapplicable because they involve examination of whether some manner of reassignment of an employee, who was qualified when hired but subsequently became disabled, was a reasonable accommodation. *See, e.g. Shiring v. Runyon,* 90 F.3d 827 (3d Cir.1996). Concerning the remaining cases, Defendants have accurately summarized the principle they espouse, however, it would not apply to Defendants' actions because the "short period of time" Dollar General "permitted" Ms. Bost to work without performing "every single function" of her position did not constitute a temporary accommodation, but rather, comprised her entire term of employment. This is not a case involving the onset of a disability subsequent to the hiring of an individual; Dollar General knew Ms. Bost's disability and accompanying limitations up front. Therefore, it cannot be said that Dollar General "accommodated" Ms. Bost simply by employing her.

On a related note, the Court is aware that an employer is not "obligated to create a 'new' position for [a] disabled employee." *Sieberns v. Wal–Mart Stores, Inc.,* 125 F.3d 1019, 1023 (7th Cir.1997) (quotation omitted). However, in this instance, that is effectively what Dollar General did and therefore the job duties for which it hired Ms. Bost were her complete job duties and constituted the position she held for purposes of the ADA.

disability to perform the essential functions of [a] position." 29 C.F.R. § 1630.2(*o*)(1)(ii). Generally, to defeat a defendant/employer's motion for summary judgment, a plaintiff need only show that an "accommodation" seems reasonable on its face. *See, e.g., Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 259 (1st Cir.2001) (plaintiff meets burden on reasonableness by showing that, "at least on the face of things," the accommodation will be feasible for the employer).

Defendants argue that "[w]hile the temporary use of a job coach to enable a disabled employee to adapt to the work place may, in some limited circumstances, be considered a reasonable accommodation, the permanent or indefinite need for a job coach most certainly is not a reasonable accommodation." (Br. in Supp. of Defs.' Mot. for Summ. J. at 15.) They further argue that the ADA does not "permit an individual to be characterized as a 'qualified individual' who requires that essential job functions be performed by someone else," and that "the job coach in this instance went far beyond 'coaching' and, in fact, performed Ms. Bost's limited job responsibilities." (*Id.* at 16.) Plaintiff responds that "it is inconceivable that … a 'helper' can never be a permanent accommodation." (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 13.) Plaintiff reasons that "[j]ust as a permanent sign language interpreter could be a reasonable accommodation for a deaf employee or a reader might be utilized by a blind employee on a permanent basis, a mentally disabled individual may need prompting

(i.e., a job coach) on a long term or permanent basis in order to be able to perform the essential functions of her job." (*Id.*) As to whether the job coach went beyond coaching and actually performed Ms. Bost's duties, Plaintiff's position is that there is no evidence to indicate the job coach performed Ms. Bost's job for her. (*Id.* at 14.)

There appears to be little case law on the subject of whether a job coach, particularly one that is not paid for or provided by the employer, may be a permanent accommodation and still be considered reasonable. Defendants cite the EEOC's Interpretive Guidelines which, in providing an example of "supported employment," state that "an employer, under certain circumstances, may be required to provide … a temporary 'job coach' to assist in the training of a qualified individual with a disability as a reasonable accommodation." 29 C.F.R. pt. 1630, app. at § 1630.9. Beyond this regulatory language, Defendants also cite a handful of unreported cases from other jurisdictions. Plaintiff responds to Defendants' legal authority by arguing that it is not persuasive, specifically contending that the cases Defendants cite are distinguishable and arguing that Defendants' reading of 29 C.F.R. pt. 1630, app. at § 1630.9 "takes the guidance out of context." [10] (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 11.) The Court will first consider two of the unreported cases which Defendants cite, and which appear to be the only directly relevant case law on the issue.

---

10. Plaintiff also argues that "[i]t is well recognized in the field of vocational rehabilitation that a job coach is a reasonable accommodation …" and cites two items of non-legal authority as support, one is a chapter from a book entitled *Supported Employment: A Community Implementation Guide* and the other is an online article from the Job Accommoda-

tion Network. (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. at 11.) Naturally, as secondary sources these articles are of limited persuasive value. Moreover though, neither article discusses the ADA or the definition of "reasonable accommodation" within the ADA framework and, therefore, they provide little utility to the Court in this case.

In *Miller v. Santa Clara County Library*, 24 Fed.Appx. 762, 2001 WL 1587574 (9th Cir. Dec.12, 2001), the employee had Down's syndrome and various related, specific disabilities. The Ninth Circuit framed the issue as "whether [the employee] is a 'qualified individual' with or without accommodation." The court concluded he was not because "[t]he record is clear that he cannot perform without a job coach at his elbow and that he does not have the basic, rudimentary knowledge required for library work. 'Reasonable accommodation' does not encompass within its meaning the use of an additional person to help the clearly unqualified who cannot perform on their own." *Miller* 24 Fed.Appx. at 765. The facts of *Miller* seem to indicate that any potential job coach would have been a "volunteer" and that the employee's mother had offered "to serve as his coach herself." *Id.* at 763. Nonetheless, the court appeared to reach its conclusion without regard to the issue of whether the employer paid for or provided the job coach and reasoned solely that an additional person to help one who was clearly unqualified was not a reasonable accommodation. The *Miller* case is distinguishable from the present matter because the employer in *Miller* was unaware, at the time of hire, of the extent to which the employee's disability might affect his job performance. It also appears that at the time of hire the employer in *Miller* was unaware of the employee's need for a job coach. In the present case, Dollar General hired Ms. Bost with knowledge that her disability would limit the job tasks she could perform. (Smith Dep. at 94–97; *see also* Onuoha Dep. at 18–20.) Additionally, Dollar General hired Ms. Bost with knowledge that she had a job coach and with an understanding of the role the job coach would play. (Onuouha Dep. at 18; Smith Dep. at 16–17, 99.) Further, the *Miller* opinion relies in part on the fact that the

claimant did not have "the basic, rudimentary knowledge required for library work," the vocation in question. Here, there is evidence that Ms. Bost had a grasp of rules of thumb of the retail industry such as, over time, learning the store's layout well enough to be able to tell customers where items were located. (Onuoha Dep. at 28.)

The second case, *EEOC v. Hertz Corp.*, 1998 WL 5694, (E.D.Mich. Jan.6, 1998), involved two claimants whom the court described as "handicapped persons (mentally retarded) ...." As in the present case, the job coaches for these individuals were furnished by a third party provider without cost to the employer. *Hertz*, 1998 WL 5694 at *1. After stating that "this is a case in which there is no discrimination whatever," the court then "put[ ] that [conclusion] aside for the moment" to examine the EEOC's argument that it could make out a prima facie case. *Id.* In so doing the court analyzed 29 C.F.R. pt. 1630, app. at § 1630.9 (quoted above), and concluded that "[i]f a temporary job coach providing job training to a qualified individual *may* be a reasonable accommodation, the clear implication is that a full-time job coach providing more than training to unqualified Individuals [sic] is not." *Id.* at *5 (emphasis in original).

Plaintiff has not cited case law contrary to the *Hertz* decision's reading of 29 C.F.R. pt. 1630, app. at § 1630.9. Thus, the Court concludes, as the Interpretive Guideline indicates, that "a temporary 'job coach' to assist in the training of a qualified individual with a disability ..." can be a reasonable accommodation but, as the *Hertz* court observed, a full-time job coach providing more than training cannot be a reasonable accommodation. 29 C.F.R. pt. 1630, app. at § 1630.9. Ultimately, the determination of "[w]hether a particular form of assistance would be required as a rea-

sonable accommodation must be determined on an individualized, case by case basis . . . ." *Id.* Because Ms. Bost was terminated for reasons other than her job performance after only three months of employment, the Court cannot say whether her job coach was only a temporary accommodation. Therefore, a genuine issue of material fact exists and it is for the fact finder to determine whether or not she might ever have been able to perform her job without a job coach. Consistent with the *Hertz* court's analysis of the EEOC Interpretive Guideline, it would appear that the accommodation would be considered reasonable only for as long as necessary to train Ms. Bost to perform her job duties independently and would be unreasonable if she required a job coach on a permanent or indefinite basis.

At this point, the Court is faced with one final hurdle in assessing the reasonableness of Ms. Bost's accommodation. Defendants assert that "the job coach in this instance went far beyond 'coaching' and, in fact, performed Ms. Bost's limited job responsibilities." (Br. in Supp. of Defs.' Mot. for Summ. J. at 16.) In response, Plaintiff cites to testimony of Ms. Bost's job coach in which the coach describes her role of organizing Ms. Bost's work area, prompting Ms. Bost and, when Ms. Bost could not do an assigned task independently, "help[ing] her do it independently." (Onuoha Dep. at 19, 26–27, 30–31.) Plaintiff also points to testimony of Store Manager Von Cannon, who never personally saw the job coach perform any job tasks for Ms. Bost except for one occasion, when Ms. Bost was folding clothes, the job coach "was talking to [Ms. Bost] and she helped [Ms. Bost] fold some of the clothes." (Von Cannon Dep. at 117.)

Based upon the facts of this case, the Court has already found that Ms. Bost was hired for a position that did not require she perform all the "essential functions" that Dollar General claims were inherent in the "clerk" position. Nevertheless, in order for Ms. Bost's job coach accommodation to have been reasonable, it is still quite necessary that Plaintiff show Ms. Bost performed those functions for which she *was* hired independently, or with "verbal prompting" and only the bare minimum of "physical prompting" needed to demonstrate proper technique. *See e.g. Martinson,* 104 F.3d at 687 ("The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position."). The EEOC's own internal compliance manual of "Procedures for Providing Reasonable Accommodation for Individuals with Disabilities" expresses the point clearly: "In no case should a staff assistant [i.e. "job coach"] be called upon—by management or by the employee(s) to whom he or she is assigned—to perform the essential functions of the job held by the employee with the disability." (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J., Ex. C at 20.)

There is some evidence that Ms. Bost's job coach may have performed some of her duties, such as lifting or moving boxes and standing ready, if need be, to provide "physical prompts," that is, actually performing a task for Ms. Bost. (Onuoha Dep. at 26–27, 30–31.) The extent of the assistance the job coach may have provided is a factual question. Thus, this presents a genuine issue of material fact as to whether Ms. Bost's accommodation was reasonable which, therefore, prevents the Court from granting summary judgment for either Plaintiff or Defendants on the question of Ms. Bost's qualification for the position she held.

In summary, the genuine issue of material fact as to whether Ms. Bost's accommodation was reasonable presents two

questions: 1) whether Ms. Bost's job coach was a temporary training accommodation such that she might, at some point, have been able to perform her job functions without a job coach; and 2) if the job coach was temporary, whether the job coach performed Ms. Bost's job duties for her. In turn, the determination of whether Ms. Bost held the status of a "qualified individual with a disability" is contingent upon whether her accommodation was reasonable. Therefore, a genuine issue of material fact exists as to whether Ms. Bost was a "qualified individual with a disability" for purposes of the ADA. Accordingly, Plaintiff's Motion for Summary Judgment, which seeks a finding that Ms. Bost was a qualified individual with a disability, must be denied. By the same token, Defendants' Motion for Summary Judgment, which seeks a finding that Ms. Bost was not a qualified individual with a disability, must also be denied.

## IV. CONCLUSION

The genuine issue of material fact as to whether Ms. Bost's accommodation was reasonable presents two questions: 1) whether Ms. Bost's job coach was a temporary training accommodation such that she might, at some point, have been able to perform her job functions without a job coach; and 2) if the job coach was temporary, whether the job coach performed Ms. Bost's job duties for her. In turn, the determination of whether she held the status of a "qualified individual with a disability" is contingent upon whether her accommodation was reasonable. Therefore, a genuine issue of material fact exists as to whether Ms. Bost was a "qualified individual with a disability" for purposes of the ADA. Accordingly, the Court must DENY Plaintiff's Motion for Summary Judgment [Document # 28] which requests a finding that this element of its prima facie case has been satisfied. For the same reasons,

the Court will DENY Defendants' Motion for Summary Judgment [Document # 24], which contends that Ms. Bost was not a "qualified individual with a disability." Further, because the Court's finding of the existence of a genuine issue of material fact as to one of the elements of Plaintiff's prima facie case prevents the Court from going beyond the prima facie elements and examining the remaining considerations necessary for Plaintiff to prove discrimination, the Court will further DENY Plaintiff's Motion for Summary Judgment [Document # 28] to the extent it requests an overall finding that Defendants violated the ADA. Those remaining considerations, which are associated with the *McDonnell Douglas* proof scheme, are for the finder of fact to decide, if it first determines that Plaintiff has met its prima facie requirement of demonstrating that Ms. Bost was a "qualified individual with a disability" by showing that her accommodation was reasonable. An Order in accord with this Memorandum Opinion shall be filed contemporaneously herewith.